UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

Mathis Kearse Wright, Jr.,

    Plaintiff,

Vs.

Sumter County Board of Elections and Registration

    Defendants.

Filed at 3:10 P.M. 3/7, 2014

Civil Action No.: 1:14-CV-42(WLS)

## INJUNCTION TO STOP MARCH 18, 2014 AND MAY 20, 2014 SUMTER COUNTY SCHOOL ELECTIONS

Plaintiff is a registered voter in Board of Education District 6 of Sumter County, Georgia:

Plaintiff request for an immediate Hearing on the matter:

1.

This action is brought before this Court on the foundation regarding racial discrimination in violation of Section 2 of the Voting Rights Act of 1965, whereby the plaintiff is a registered voter in Sumter County, Georgia and is an elector having the right to vote for a candidate of choice. The proposed plan follows the current Sumter County Board of Commissioner District Lines, which has 5 members. The 5 member Sumter County Board of Commissioners, Districts is in violation of Section 2 of the Voting Rights Act of 1965. Whereby, Black African Americans have not held more than 2 of the 5 District seats ever. The Sumter County School Board Districts are composed of 9 members and should not be changed to mimic the Sumter County Board of Commissioners; which has 5 Members. The Sumter County Board of Commissioners 5 Member Districts is a violation of Section 2 of the Voting Rights Act of 1965. By packing the Black African American Voters into 2 Districts, the Sumter County Board of Commissioners violates Section 2 of the Voting Rights Act of 1965. The Sumter County Commissioners 5 Member Districts should be changed to 9 Member

1

Districts to stop the violation of Section 2 of the Voting Rights Act of 1965. Plaintiff knows that the current majority Black African American school board is as effective as any majority Caucasian (White) board of Sumter County, Georgia. Plaintiff knows that the majority Caucasian (White) board did not respond to discrimination against Black African American students and parents when Caucasian (White) teachers and counselors deliberately changed grades in order for Caucasian (White) students to be named Valedictorian over a period of eight (8) years. When actions were sought by the Black Community to reprimand the Caucasian (White) teachers and counselors, the then majority Caucasian (White) School Board voted together as one to not reprimand those who were involved in the Valedictorian scandal. Subsequently, the vote was along racial lines. The United States Department of Justice, Education Division after concluding their investigation found that the Black African American Students' grades had been arbitrarily changed.

Plaintiff has legitimate reason in keeping the current nine (9) school board districts and the current board members in office.

2.

This action is sought for equal justice as provided under the Federal, State and Local Laws of the United States of America. Sumter County, Georgia has a history of racial discrimination, as well as the State of Georgia itself. For example; the Department of Juvenile Justice (DJJ) of the State of Georgia has intervened on behalf of the local Caucasian officials to assure that the desired change in the Sumter County School Board will be successful whereby one of the Black school board members, incumbent Carolyn Whitehead, employed by DJJ for twenty-eight (28) years – has served on the Sumter County School Board in District five (5) for twenty (20) years. Whitehead was told that if she qualified for the upcoming election (March 18, 2014) without getting approval from her

employer, then her job would be in jeopardy. This is blatant discrimination and a violation of the Voting Rights Act of 1965.

## BACKGROUND

3.

In this case discriminatory acts began when the Sumter County School District elected a majority Black school board in 2011. The White officials and special interest groups devised a redistricting plan to dilute the Black vote. The redistricting plan was designed to reduce the number of Black school board members from six (6) to two (2). The pretext by officials was to decrease the opportunity for Black voters to participate in the political process.

Each and every redistricting cycle has been marked by efforts to dilute the Black African American and Hispanic vote. Further, the officials and their supporters took other discriminatory actions against the majority Black board and Black community. (1) The first action was when the majority Black school board was brought before the Superior Court of Sumter County, Georgia – Southwestern Judicial Circuit during the February 2012 Grand Jury Term. (2) The first-time any majority school board was summoned to a hearing before Georgia State Board of Education in November, 2012. (3) The first-time any majority school board had to answer open-meetings act complaints made with the Georgia Department of Law. (4) The first-time any school board had to petition for expungement of the 2011 Grand Jury report in the Superior Court of Sumter County, Georgia. (5) The first-time any majority elected board was subjected to the Southern Association of Colleges and Schools (SACS) investigation, subsequently placing the school district's accreditation in jeopardy, which could potentially damage the eighty percent (80%) majority Black African American population and others in the school district. (6) The first-time any majority school board members' employers were demanded by supporters of the three Whites on the school board to fire the Black

members from their individual jobs. (7) The first-time any majority school board was subjected to a lawsuit in the United States District Court for the Middle District of Georgia. All of these actions against the six Black school board members were discriminatory and racially motivated which violates Section 2 of the Voting Rights Act of 1965.

4.

Local history shows that no Black African American has ever won a county-wide election in Sumter County, Georgia. Local history also shows that the Sumter County School District has been involved in litigation involving at-large districts; see Edge V. Sumter County School District, 775 F.2d 1509 (11th Cir. 1985). The Eleventh Circuit Court of Appeals concluded that District Court could not validly adopt a reapportionment (Redistrict) plan without determining whether the plan complied with Section 2 of the Voting Rights Act, 42 U.S.C. §1973. History states that in Spalding County, Griffin Georgia, officials sought to adopt a redistricting plan under which only two of the six single member districts would be majority Black even though the Black population had increased. History states that in nearby Webster County, Georgia officials adopted a new redistricting plan on the eve of the last redistricting cycle for the Webster county board of education. The plan would have significantly reduced the Black population in three of the board's five single-member districts. The Department of Justice blocked the plan observing that there was serious doubt that minority voters would have an equal opportunity to elect candidates of choice in either district. The department of justice found evidence of discriminatory purpose underlying the adoption of the plan noting that the move to adopt a new redistricting plan was initiated only after the Webster County school district elected a majority Black school board for the first time in 1996. The proposed HB 836 plan in Sumter County, Georgia currently mirrors Webster County, Georgia and violates Section 2 of the Voting Rights Act of 1965.

5.

## ARGUMENTS

The current plan set forth in Senate Bill 154 and Senate Bill 4EX are in violation of Section 2 of the Voting Rights Act of 1965. The plan set forth in SB154 and SB4EX are not only subject to preclearance, but are clearly discriminatory against the Black African American population in Sumter County, Georgia and cannot supersede Section 2 of the Voting Rights Act of 1965.

House Bill 836 which has been passed by the Georgia General Assembly also violates Section 2 of the Voting Rights Act of 1965; whereby HB836 is a racially discriminatory Bill against the Black African American voters.

All three Bills (SB154, SB4EX and HB836) were created and crafted for one purpose only; to make sure that the power structure is changed from the majority Black School Board in Sumter County, Georgia. The 3 Bills will immediately provide the opportunity for Caucasians to regain the majority Sumter County, Georgia School Board Seats, and is in violation of Section 2 of the Voting Rights Act of 1965. The 3 Bills (SB 154, SB4EX, and HB836) are "JIM CROW" Laws designed to oppress and dilute the Black African American Voters in Sumter County, Georgia.

6.

The State and local governmental laws prohibits the power structure from adopting practices, procedures, and redistricting plans that **dilute** minority voting strength which is discriminatory and violate Section 2 of the Voting Rights Act of 1965 (see Thornburg v. Gingles).

7.

If the proposed change is enforced it will change the current Sumter County, Georgia school board from six Black-African Americans and three Caucasian (Whites) to mirror the current Sumter County Commissioners that has Three Caucasian (Whites) and two Black African Americans. This plan would group sufficiently large Black populations which would concentrate the Black majority in a single-member district (which would change the current six majority district(s) to a two majority Black district(s). The current Sumter County Board of Commissioners Districts reflects a clear violation of Section 2 of the Voting Rights Act of 1965.

8.

Sumter County, Georgia has a history whereby the minority group is politically cohesive and usually votes for the same candidate(s), in all elections. For example; in School Board Election District 3 (2011), Incumbent Donna Minich (Caucasian White female) lost to Kelvin Pless (Black African American male). After reviewing who voted in the election it was clear that the votes were along racial lines; the majority of Caucasian voters voted for Minich, and Black voters voted for Pless.

9.

The majority of Caucasian (White) voters in Sumter County, Georgia always vote together to defeat any preferred candidate representing the Black population. For example; In the Sumter County Commissioner District 4 race in 2006; Incumbent Tift Pace (Caucasian), Randy Howard (Caucasian) and Mathis Wright (Black), were competing for District 4. Howard and Wright were paired in a runoff. After reviewing the voters in the election it was clear that Caucasians who had voted for Pace (Caucasian) supported Howard (Caucasian) to assure that Wright (Black) was defeated; Wright was the preferred black candidate.

10.

Sumter County, Georgia officials considering the totality of the circumstances, the minority group has less opportunity than other members of the electorate to participate in the electoral process and to elect representatives of their choice.

The proposed plan will result in vote dilution that will compress minority communities into a small number of districts (known as "packing"), or spread them thinly into a large number of districts (known as "cracking, fracturing, or splitting").

This proposed plan violates Section 2 of the Voting Rights Act of 1965 and will unequivocally change the current Sumter County School Board from six Blacks and three Caucasians, to five Caucasians and two Black African Americans.

11.

The proposed plan is in fact discriminatory and violates Section 2 of the Voting Rights Act of 1965 seeing that Sumter County and the State of Georgia has a history of official voting-related discrimination practices. The practices have been repeatedly used to discriminate and obstruct Blacks and other minorities from the right to vote and select the candidate(s) of their choice and forced to accept discriminatory practices that violates Section 2 of the Voting Rights Act of 1965.

12.

The proposed plan if passed will be in fact retrogressive and discriminatory; violating Section 2 of the Voting Rights Act of 1965. Also, the proposed plan is most assuredly a polarization of race relations in Sumter County, Georgia.

13.

The proposed plan is discriminatory and violates Section 2 of the Voting Rights Act of 1965 in that the two At-Large seats in the plan is no more than a bullet voting scheme that will prevent Black African American voters from selecting the candidate of choice.

14.

The proposed plan is discriminatory and violates Section 2 of the Voting Rights Act of 1965 in that the proposed plan is a form of candidate slating whereby Black African American candidates will lose their seats without being voted-out by their constituents in their district(s).

15.

The proposed plan is discriminatory and violates the Voting Rights Act of 1965 to which Black African Americans and other minority group members bear the effects of discrimination in the areas of education, employment, health, social and human rights, which hinder their ability to participate effectively in the political process. SB154, SB4EX and HB836 are all "JIM CROW" bills designed and created to prevent Black African Americans as well as other minority voters the ability to participate adequately in the political process, and is no more than racial discrimination which blatantly violates the Voting Rights Act of 1965.

16.

The proposed plan is discriminatory and racially motivated which violates Section 2 of the Voting Rights Act of 1965 in that the local Caucasian officials only sought to redo district lines after the school board became a Black majority board after the November election in 2010.

17.

**RELIEF**

Plaintiff requests that the Court grant the following:

a. Stop the March 18, 2014 Election,

b. Stop the May 20, 2014 Election,

c. Order correct district lines to be drawn that will not violate Section 2 of the Voting Rights Act of 1965, and

d. Order districts for Sumter County, Georgia School Board to have nine (9) districts only.

_____
Rev. Mathis Kearse Wright, Jr.
Prose
President, GAAAP


Post Office Box 304
217 Forrest St.
Americus, Georgia 31709
229-924-0880

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| Mathis Kearse Wright, Jr., : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.:_____ |
| : | |
| Vs. : | |
| : | |
| : | |
| Sumter County Board of Elections and Registration : | |
| : | |
| Defendants. : | |
| : | |

### CERTIFICATE OF SERVICE

    This is to certify that the foregoing Injunction is a true and accurate copy of this document which will be served by a Civil Servant of the Sumter County, Georgia Sheriff's Office on the Defendant's Counsel, William NeSmith, III; Chairman of the Sumter County Georgia Board of Elections, Michael Tracy; Sumter County Georgia Board of Elections Supervisor, Robert Brady; Chairwoman of the Sumter County Georgia School Board, Edith A. Green; and Superintendent of Sumter County Georgia School Districts, Donnie Smith: by filing and paying sufficient fees to assure proper service by the Sumter County Georgia Sheriff Office.

Attorney William NeSmith, III
Sumter County Georgia Counsel
500 West Lamar St.
Americus, Georgia 31709

Mr. Michael Tracy, Chairman
Sumter County Board of Elections
500 West Lamar St.
Americus, Georgia 31709

Mr. Robert Brady, Supervisor
Sumter County Board of Elections
500 West Lamar St.
Americus, Georgia 31709

Mrs. Edith A. Green, Chairwoman
Sumter County School Board
100 Learning Lane
Americus, Georgia 31709

Mr. Donnie Smith, Superintendent
Sumter County Georgia School Districts
100 Learning Lane
Americus, Georgia 31709

Date: *March 07, 2014*

_____
Mathis Kearse Wright, Jr., Pro se
P.O. Box 304
217 Forrest Street
Americus, Georgia 31709
(229) 924-0880