# Desegregation of Public School Districts in Georgia

## 35 Public School Districts Have Unitary Status
## 75 Districts Remain Under Court Jurisdiction

### A Fact-finding Report

Georgia Advisory Committee to the
United States Commission on Civil Rights

December 2007
Correction Issued May 2009



PLAINTIFF'S TRIAL EXHIBIT 260

045970

## Georgia Advisory Committee to the U.S. Commission on Civil Rights

Charles Tanksley, *Chairman*
Marietta

Tony Boatwright
Columbia

Alvin Culbreth
Savannah

Julius Wayne Dudley
Atlanta

Herbert Garrett
McDonough

Shannon Goessling
Atlanta

Ann Kasun
Valdosta

William Jordan
Atlanta

Luis Perez-Eguiarte
Atlanta

Arch Stokes
College Park

Pamela White-Colbert
Macon

## Acknowledgements and U.S. Commission Contact

USCCR Contact

Peter Minarik, Ph.D.
Regional Director, Southern Regional Office
U.S. Commission on Civil Rights
61 Forsyth St., SW, Suite 18T40
Atlanta, GA 30303
(404) 562-7000 or pminarik@usccr.gov

Acknowledgements—Research and analysis contained in this report were conducted under the direction and supervision of Peter Minarik, Regional Director, Southern Regional Office. Minh Do and Kevin Golden contributed with school district data collection; Blake Reynolds contributed to the analysis.

## Section III -- 75 Georgia School Districts Remain Under Court Jurisdiction

Of the 110 school districts in Georgia ever subject to litigation with respect to school segregation, 75 school districts remain under court jurisdiction. The plaintiff for 66 of these 75 remaining school desegregation cases is the Department of Justice. Of these 75 school districts, only 16 districts: Baldwin, Calhoun, Colquitt, Cook, Coweta, Crisp, Decatur City, Dougherty, Dublin City, Irwin, Meriwether, Telfair, Turner, Valdosta City, Walker, and Walton, indicated to the Committee that they are actively seeking unitary status. Six other school districts indicated that they may consider pursuing unitary status in the future.

### 1. The "Ridley Decision"

On August 1, 1969, the United States initiated a statewide suit against the State of Georgia and 71 school districts for their failure to desegregate their public schools. The United States District Court for the Northern District of Georgia issued a regulatory injunction, which set out the defendants' duties as a result of *Brown v. Board of Education*.[33] The case acquired the moniker "Ridley" from the involvement of Charles Ridley, who intervened in 1970 on behalf of black school children in the districts.

In 1972 the Northern District Court added each school district as defendants and transferred the cases to the appropriate district courts throughout the state.[34] Forty-seven (47) public school districts were transferred to the United States District Court for the Middle District of Georgia in Macon. Twenty-one public school districts were transferred to the United States District Court for the Southern District of Georgia in Savannah. The eleven remaining public school districts were retained in the Northern District Court.[35]

On June 7, 1973, the Northern District Court ordered the United States to present evidence of why school districts within the court's jurisdiction should not be dismissed from the suit. In addition, on June 28, 1973, the State of Georgia moved to have the case dismissed as well.[36] The United States replied, acknowledging that while the school districts were "unitary" in the sense required, but arguing that the districts should be placed on the inactive docket under a more general permanent injunction, rather than dismissed from the case and released from court supervision. In addition, the United States also recommended that this new injunction expire after seven years of substantial compliance on the part of the districts.

On July 23, 1973, an order was entered in the Northern District Court that dissolved the detailed regulatory injunction of 1969 and placed the districts in that court's jurisdiction under a new permanent injunction. This new injunction imposed upon the various districts general obligations prohibiting discriminatory actions. However, a key difference between this order and the one proposed by the United States on July 11, 1973, is that the order placed the case on the inactive docket for an indefinite period of time, subject to reactivation upon application of any party, specifically omitting the seven-year expiration date proposed by Justice.

---

[33] US v. State of Georgia, Meriwether Co., No 97-9199 US Court of Appeals for 11th Circuit, April 8, 1999.
[34] US and Ridley v. State of Georgia, et al., C.A. No, 12972 Northern District of Georgia, September 5, 1972.
[35] The total number of districts dropped from 81 to 79 due to the consolidation of two city districts with their corresponding county districts.
[36] U.S. v. State of Georgia, et al., C.A. No. 12972 Northern District of Georgia, July 23, 1973

20

| | | |
|---|---|---|
| 49 | Montgomery County | 1969 |
| 50 | Newton County | 1969 |
| 51 | Peach County | 1969 |
| 52 | Pulaski County | 1969 |
| 53 | Randolph County | 1969 |
| 54 | Richmond County | 1972 |
| 55 | Rome City | 1969 |
| 56 | Screven County | 1969 |
| 57 | Sumter County | 1969 |
| 58 | Tattnall County | 1969 |
| 59 | Taylor County | 1969 |
| 60 | Telfair County | 1969 ♦ |
| 61 | Terrell County | 1969 |
| 62 | Toombs County | 1969 |
| 63 | Turner County | 1968 ♦ |
| 64 | Twiggs County | 1969 |
| 65 | Valdosta City | 1970 ♦ |
| 66 | Vidalia City | 1969 |
| 67 | Walker County | 1969 ♦ |
| 68 | Walton County | 1963 ♦ |
| 69 | Warren County | 1969 |
| 70 | Washington County | 1970 |
| 71 | Wayne County | 1969 |
| 72 | Wheeler County | 1969 |
| 73 | Wilcox County | 1969 |
| 74 | Wilkinson County | 1969 |
| 75 | Worth County | 1969 |

Note: ♦ Indicates district is actively pursuing "unitary status."
Source: Georgia Advisory Committee.

On December 27, 1973, the State defendants moved the Middle District Court and the Southern District Court to either dismiss the case or enter an order similar to that of the Northern District that placed school districts found to be "unitary" under a permanent injunction on the inactive docket of the court. All parties agreed that the permanent injunction option was appropriate. The Middle District Court placed the school districts in its jurisdiction under a permanent injunction on January 24, 1974.[37] The Southern District Court did the same for school districts in its jurisdiction on February 14, 1974.[38]

This use of the word "unitary" in the 1973 order from the Northern District and the 1974 order of the Middle and Southern Districts resulted in much confusion on the part of Georgia school districts and others. Many were under the impression that these orders granted these districts unitary status. However, after examining these and other court documents[39] and consulting the legal counsel for numerous school districts, the Committee does not interpret these orders as granting unitary status to these districts. Rather, these decisions place the districts firmly under the effect of a permanent injunction. In the legal sense, a permanent injunction is a court order commanding or preventing an action until after a final hearing on the merits. In a general sense, every order of a court which commands or forbids is an injunction. However, in its accepted legal sense, an injunction is a judicial mandate operating under established principles of equity, and a party is refrained from doing a particular thing.

---

[37] U.S. v. State of Georgia, C.A. No. 2771 (M.D.Ga. 1974).
[38] U.S. v. State of Georgia, C.A. No. 3009 (S.D.Ga. 1974).
[39] See U.S. v. Georgia, 171 F.3d 1344 (11th Cir. 1999) reh'g denied 1999 U.S. App. LEXIS 32421 1999).

22

Rome City School District

Rome City is located in Floyd County in the northeastern part of the state. There are two school districts in the county, Floyd County School District and Rome City School District. The Rome City School District operates schools and the district is mixed racially. Total enrollment in the district is approximately 5,400 students. Blacks are the largest racial group at about 40 percent of total enrollment, while whites and Latinos comprise about 35 percent and 20 percent respectively. The district has been under court jurisdiction since 1969, and according to a representative for the district the district does not plan to pursue unitary status at this time.[94]

Initiating Case Name:     U.S. v. State of Georgia, et al., C.A. No. 12972
Year of Initiating Case:  1969
Current Status:           Under Court Order

Screven County School District

Screven County is located in the east-central part of the state. The district is mixed racially with a total enrollment of approximately 3,000 students. Blacks are a majority in the district at about 55 percent of total enrollment. The district has been under court jurisdiction since 1969 and according to a representative for the district the district does not plan to pursue unitary status at this time due to the financial burdens that would place on the district.[95]

Initiating Case Name:     U.S. v. Screven County Board of Ed, No. 2293
Year of Initiating Case:  1969
Current Status:           Under Court Order

Sumter County School District

Sumter County is located in the west-central part of the state. The entire county comprises one school district, and there are 10 schools in the district. Total enrollment of the district is approximately 5,600 students, and the district is majority-minority with blacks comprising about 75 percent of total enrollment. The district has been under court jurisdiction since 1969, and according to a representative for the district the matter with respect to seeking unitary status "has simply not come to the attention of school district officials before now. [If] the United States Department of Justice would like to propose a Consent Order terminating the litigation, the School District would, in all likelihood, look favorably upon such a proposal."[96]

Initiating Case Name:     U.S. v. State of Georgia, et al., C.A. No. 12972
Year of Initiating Case:  1969
Current Status:           Under Court Order

---

[94] William W. Byington, Jr., attorney for Rome City School District, letter to Peter Minarik, March 7, 2006, Southern Regional Office, USCCR, files.
[95] Vanderver R. Pool, attorney for Screven County School District, letter to Peter Minarik, Dec. 15, 2005, Southern Regional Office, USCCR, files.
[96] James M. Skipper, Jr., attorney for Sumter County School District, letter to Peter Minarik, Dec. 16, 2005, Southern Regional Office, USCCR, files.

37

Figure 1: Location of 19 Georgia Counties Where Over One-Third of White School Age Children Attend Private Schools

Source: Georgia Advisory Committee.

In Georgia, 12 counties have over one half of their white school age population attending private schools. These counties are: (1) Baker, (2) Calhoun, (3) Clay, (4) Dooly, (5) Hancock, (6) Macon, (7) Randolph, (8) Stewart, (9) Talbot, (10) Taliaferro, (11) Terrell, and (12) Warren. (Figure 1 shows the location of the 12 counties.) Three of these 12 county school districts—Baker, Clay, and Hancock—have "unitary status" while six remain under a court order and three were never subject to school desegregation litigation. In seven other counties in the state, over one-third of the white school age population attends private schools.[125] These counties include: (1) Bibb, (2) Chatham, (3) Dougherty, (4) Greene, (5) Putnam, (6) Quitman, and (7) Sumter. Four of these school districts—Bibb, Chatham, Putnam, and Quitman—have received a declaration of "unitary status" while two remain under a court order and one is a non-litigant. The trend in these 19 counties exceeds the general trend for the state for children attending private schools. That is, these counties have disproportionately larger private school enrollments for white children than most Georgia counties.

The percentage of whites enrolled in private schools with the percentage of non-white enrollment in public schools exhibits an exponential relationship. As the percentage of public school enrollment is increasingly minority there is an even greater percentage increase in white enrollment in private schools in the district. In contrast, when the public school enrollment is majority white, the percentage of whites enrolled in private schools is similar to their proportion of total enrollment. As a result, public school districts that have higher nonwhite enrollments tend to have disproportionately lower white enrollments compared to the actual demographics of the district. That is, whites in a county increasingly attend private schools when the public schools in the county become majority nonwhite. The above data suggests that public school districts in the state represent a higher non-white population and a lower white population in their schools than the actual demographics of the district. Figure 2 shows these trends graphically.

---

[125] National Center of Education Statistics, Common Core of Data 2000 school year and 2000 census.

50