IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MATHIS KEARSE WRIGHT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:14-cv-42 (WLS) |
| | ) | |
| SUMTER COUNTY BOARD OF | ) | |
| ELECTIONS AND REGISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Mathis Kearse Wright, Jr. respectfully moves the Court for a temporary

restraining order and preliminary injunction prohibiting the Sumter County Board of Elections

and Registration from conducting the school-board elections currently scheduled for May 22,

2018. **In the absence of an injunction, those elections will go forward beginning on Monday,**

**April 3.** The purpose of this motion is to maintain the status quo until the Court adopts an

appropriate interim remedy for its March 17 finding that the current method of electing school-

board members dilutes African-American voting strength in violation of Section 2 of the Voting

Rights Act of 1965, 52 U.S.C. §10301. (ECF 198.)

**BACKGROUND**

This is a Section 2 challenge to the method of electing members of the Board of

Education in Sumter County, Georgia. The plaintiff, Mathis Kearse, Wright, Jr., is an African-

American resident and registered voter in Sumter County. The defendant is the Sumter County

Board of Elections and Registration (the "County"), which is responsible for conducting

1

elections for members of the Sumter County Board of Education. Act No. 87, 2001 Ga. Laws 3865.

Wright filed his complaint and motion for a preliminary injunction on March 7, 2014. (ECF 1.) On April 3, 2014, the Court denied Wright's motion for a preliminary injunction. (ECF 17.) On July 14, 2015, the Court granted the County's motion for summary judgment and granted judgment in its favor. (ECF 62; 63.) A year later, the Eleventh Circuit reversed. (ECF 71.)

The Court subsequently reopened discovery at the parties' request. (ECF 76.)

In a scheduling order entered on December 20, 2016 (ECF 85), this Court instructed the parties "tentatively" to be ready for trial to begin on Monday, June 5, 2017. Following a series of discovery extensions caused by the ill health of one of the defendant's attorneys, the Court subsequently indicated that the case would not be ready for trial in June, but it gave no other trial date. (ECF 99.) The Court later assured the parties that "upon review of its trial calendar," permitting the defendant to file an untimely discovery motion would not push the trial date beyond the next school-board election. (ECF 102.)

On June 20, 2017, Wright moved the Court for a status conference to discuss scheduling the trial. (ECF 107.) The Court denied that motion but ordered the parties to submit a written status report identifying the relevant dates in the election calendar for the 2018 school-board elections. (ECF 108.) The parties filed their joint report on July 13, indicating, among other things, that the qualifying period for school-board candidates runs from March 5, 2018, at 9:00 a.m. until March 9, 2018, at noon. (ECF 111.)

On September 21, 2017, this Court set the case for trial beginning on December 11, 2017, "so that a judgment may be issued prior to the 2018 school board general election." (ECF 114 at 2.)

On October 26, 2017, the Court granted partial summary judgment in Wright's favor. (ECF 125.) Specifically, the Court concluded that the African American community in Sumter County is sufficiently large and geographically compact to constitute a majority in an additional single-member district, satisfying the first *Gingles* factor. (ECF 125 at 20.) The Court also concluded the following material facts are undisputed and will be treated as established in the case: (1) Sumter County uses a majority-vote requirement; (2) no African American has been elected to an at-large seat on the school board under the challenged plan; and (3) no African Americans have been elected in school board districts except where African Americans constitute a majority of the voting-age population. (*Id.*)

The Court held a trial on the merits over four days in December 2017 and allowed the parties to submit evidence, testimony, and written arguments. (ECF 144, 145, 146, 148, 161, 162, and 163.) At the conclusion of trial, the Court set a post-trial briefing schedule that was expected to end in early February, thus giving the Court time to resolve this case on the merits before qualifying for the 2018 school-board elections would begin. (ECF 147; Trial Tr. vol. 4, 145-153.)

On February 9, however, the Court advised the parties that it no longer believed that it could rule on the merits and, if necessary, implement a remedial plan before March 5. (ECF 179.) The Court called a status conference to discuss, among other things, "whether the Court should allow the May 2018 election to proceed as planned with the current districts or enjoin the

election." (*Id.* at 2.) Following that conference, the Court issued an order inviting Wright "to file a motion for injunctive relief if he believes such a motion is needed." (ECF 189.)

Wright filed a motion for a preliminary injunction shortly thereafter. (ECF 190.)

On March 17, 2018, before Wright's motion had been fully briefed, the Court issued a 38-page order finding, "based on the totality of the circumstances, that the at-large districts of the Sumter County Board of Education dilute African-American voting strength in violation of Section 2 of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301." (ECF 198 at 37.) The Court did not adopt a remedy in its order but noted instead that this case "now moves to a remedial stage." (*Id.*) The Court ordered the defendant to "to confer with Sumter County's legislative delegation and inform that Court . . . . whether the General Assembly is inclined to enact a remedial plan before adjourning *sine die* or, if not, a timeline for when it believes a remedial plan could be adopted." (*Id.*) In light of its order, the Court denied Wright's motion for a preliminary injunction without prejudice. (*Id.* at 38.)

On Monday, March 26, the defendant filed a status report in which it indicated that the legislature would not adopt a remedy in the current legislative session and that the General Assembly could take up the matter at its next legislative session, which is scheduled to begin in January 2019. (ECF 201.)

Last night, the General Assembly adjourned *sine die* without adopting a remedy.

This coming Monday, April 3, is the earliest day under Georgia law for Sumter County to begin distributing absentee ballots for the 2018 school-board election. O.C.G.A. § 21-2-384(a)(2). (ECF 111.) Without an injunction, in other words, voting begins on Monday.

**ARGUMENT**

To obtain a preliminary injunction, a plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Wright can satisfy those elements here.

**1.      Wright has already succeeded on the merits.**

This Court has already ruled in Wright's favor on the merits of his claim. (ECF 198.) The first, and most important, *Winter* factor is obviously satisfied.

**2.      Wright will suffer irreparable harm in the absence of an injunction.**

Harm is irreparable for purposes of a preliminary injunction when "it cannot be undone through monetary means." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Harms that touch upon the constitutional and statutory rights of political parties, candidates, and voters are generally not compensable by money damages and are therefore considered irreparable. *See, e.g., Elrod v. Burns*, 427 U.S. 347 373 (1976) (plurality opinion); *League of Women Voters v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *Ga. State Conference of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347 (N.D. Ga., 2015); *Bird v. Sumter County Bd. of Educ.*, 1:12-cv-76 (M.D. Ga., June 21, 2012).

Part of the reason for this treatment of political and voting harms is the special importance of the right to vote in the American democratic tradition:

> Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. 533, 561-62 (1962); *accord Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."). Money cannot fully compensate an individual for the loss of a right so fundamental. Part of the reason is also practical: a court simply cannot undo, by means of a special election or otherwise, all of the effects of an invalid election. Tremendous practical advantages accrue to those who win even tainted elections, and a court simply has no way to re-level the playing field. *See, e.g., League of Women Voters of N.C.*, 769 F.3d at 247 ("Courts routinely deem restrictions on fundamental voting rights irreparable injury" because "once the election occurs, there can be no do-over and no redress.").

In this case, the irreparable nature of the threatened injuries is obvious. Money cannot compensate the plaintiff for allowing an election to go forward under a racially discriminatory election plan. Moreover, the May 22, 2018, election is a general election, meaning that the election directly decides the membership of the Board of Education for the next four years. Whereas the results of a primary election might be stayed, the results of a general election carry a heavier weight, further magnifying the injury to the plaintiff's right to vote should the election go forward. In addition, allowing the election to go forward would likely require the Court to re-open discovery, re-open the record, and conduct another trial. *See, e.g., Levy v. Lexington Cnty.* 589 F.3d 708, 715 (4th Cir. 2009). This *Winter* factor weighs in favor of granting the injunction.

**3.**      **The balance of harms favors Wright.**

The third *Winter* factor requires the Court to consider the potential impact that the requested injunction might have upon the Board of Elections, and to balance that potential with the considerable and irreparable harms that Wright would suffer should his request be denied. There is no question that the balance of equities tip in Wright's favor here.

The Board of Elections will suffer no harm if the injunction is granted. A new election can be scheduled to coincide with the November general election. Members of the Board of Education can take office in January, as they would even if the election were to proceed as scheduled in May.

By contrast, Wright will continue to be significantly and irreparably harmed in the absence of an injunction, as yet another election will go forward under a discriminatory plan.

**4.**      **A preliminary injunction would serve the public interest.**

The public interest in this case is clear. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012)), *aff'd* 134 S. Ct. 2751 (2014); *accord League of Women Voters of N.C.,* 769 F.3d at 247. The requested injunction will ensure that the 2018 school-board election is held under a lawful election plan. Without it, the election will be held under a plan that discriminates against African American voters. The public undoubtedly has a vital interest in the conduct of free, fair, and constitutional elections. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (recognizing the public has a "strong interest in exercising the fundamental political right to vote" (citations omitted)). The requested injunction, if granted, would therefore favor the public interest.

**CONCLUSION**

For the foregoing reasons, the Court should immediately enjoin the defendant from conducting the school-board elections currently scheduled for May 22, 2018. Even though ballots for the election have likely already been printed, it is not too late for the Sumter County Supervisor of Elections to: (a) redact the names of school-board candidates by means of a sticker or permanent marker; (b) include a notice with the ballots that the school-board election has been cancelled; or (c) both. (*See* Exhibit 1 – email from Katherine McKnight.) Alternatively, the Court could enjoin the defendant from distributing *any* ballots for a few days while the parties attempt to agree on a suitable procedure for cancelling the election. Either solution will ultimately give the Court additional time to devise an interim remedy under which the 2018 school-board elections may lawfully proceed.

As a further alternative, the Court may now simply adopt an interim remedy. The parties have had an extensive opportunity to litigate the issue. (ECF 140, 141, 142, 174, 176, 177, 178, 181, 182, 183, 184, 185, 187, 188, 189, 196, 199, 200, 201.) And the Court has everything it needs to adopt one of the plaintiff's remedial proposals, which remain the only actual proposals before the Court. The posture of this case is now quite similar to *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1372-74 (N.D. Ga. 2016), *aff'd* No. 16-11689 (11th Cir. 2017) (per curiam). The parties in that case had filed cross motions for summary judgment in December 2015. While those motions were still pending, and cognizant of the upcoming presidential election, Judge Story held an in-camera status conference at which he advised the parties that he intended to rule in the plaintiff's favor. *See id.* at 1373. At that meeting, Judge Story asked the defendant (Georgia's Secretary of State, Brian P. Kemp) to confer with legislative leadership to see if the legislature might address the issue before the end of the session. *See id.* A week later,

the defendant's counsel advised the court that a proposed remedy would not be forthcoming. *See id.* Judge Story then issued his ruling and implemented an interim remedy along with it. *See id.* at 1373-74. That remedial approach was upheld on appeal.

In this case, the Court gave Sumter County and the legislature an opportunity to devise a remedy. As in *Green Party*, the legislature declined to act. That decision cleared the way for this Court to order an interim remedy which, like all court-ordered remedial plans, can be supplanted by the General Assembly any time it wants to enact a lawful plan.

Under no circumstances, however, should the election be allowed to go forward under an unlawful and discriminatory election plan. *See Clark v. Roemer,* 500 U.S. 646, 652-53 (1991) (the district court erred in failing to enjoin elections held in violation of the Voting Rights Act); *Lucas v. Townsend*, 486 U.S. 1301, 1305 (1988) ("Permitting the election to go forward would place the burdens of inertia and litigation delay on those whom the statute was intended to protect, despite their obvious diligence in seeking an adjudication of their rights prior to the election."); *Reynolds v. Sims,* 377 U.S. 533, 585 (1964) ("it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan"). As Judge Story observed in his *Green Party* opinion, "[t]his Court is a court of equity." 171 F. Supp. 3d at 1372. The Court has tremendous flexibility in shaping its remedies in the voting-rights context because of the public interests involved, and there is no greater public interest in our democracy than protecting the right to vote. Having found a violation of such precious rights, and in light of the General Assembly's choice not to adopt a remedy, equity requires the Court to act.

Date:    March 30, 2018

Respectfully submitted by:

/s/ Bryan L. Sells
BRYAN L. SELLS
Georgia Bar #635562
The Law Office of Bryan L. Sells, LLC.
P.O. Box 5493
Atlanta, GA    31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

M. LAUGHLIN McDONALD
American Civil Liberties Union
   Foundation, Inc.
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
Tel: (404) 500-1235
Fax: (404) 565-2886
lmcdonald@aclu.org

AKLIMA KHONDOKER
Georgia Bar No.: 410345
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA
P.O. Box 77208 77208
Atlanta, Georgia 33057
(770) 303-8111
akhondoker@acluga.org

ATTORNEYS FOR PLAINTIFF
MATHIS KEARSE WRIGHT, JR.

CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing PLAINTIFF'S EMERGENCY MOTION

FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION with

the Clerk of Court using the CM/ECF system which will automatically send email notification of

such filing to the following attorneys of record:


E. Mark Braden
mbraden@bakerlaw.com

Katherine L. McKnight
kmcknight@bakerlaw.com

Richard B. Raile
rraile@bakerlaw.com

Kimberly A Reid
kimberly.reid@lawsonreidlaw.com

Trevor Stanley
tstanley@bakerlaw.com

Dated this 30th day of March, 2018.


/s/ Bryan L. Sells
BRYAN L. SELLS
Georgia Bar #635562
P.O. Box 5493
Atlanta, GA   31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com