IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MATHIS KEARSE WRIGHT, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO.: 1:14-CV-42 (WLS) |
| v. | : | |
| | : | |
| SUMTER COUNTY BOARD OF ELECTIONS AND REGISTRATION, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **ORDER**

      On July 31, 2018, Plaintiff filed an Emergency Motion for an Injunction Pending Appeal. (Doc. 218.) On August 9, 2018, the United States Court of Appeals for the Eleventh Circuit remanded this case to this Court with instructions. (Doc. 225.) The Eleventh Circuit instructed this Court to "first determine whether it is still feasible to issue a new map with interim boundaries for the November election in a timely manner," but, if this Court determines that it is too late to do so, "then it should enter an order to that effect, resolve any motions filed by the parties regarding the operation of the November election, and then return the case to [the Eleventh Circuit]." (*Id.* at 3.) Following the remand order, Plaintiff moved this Court for a telephonic status conference "to discuss how to comply with the Eleventh Circuit's instructions" or an evidentiary hearing. (Doc. 226 at 2.) The Court granted the motion, but the short timeframe made an actual hearing unfeasible, so the Court set this matter for a telephonic conference so that it could hear from the Parties. (Doc. 227.) The Court also asked the Parties to provide a succinct description of their positions on the issues to be discussed during the conference, with which the Parties complied. Plaintiff stated during the conference that it believed it was feasible for the Court to set interim boundaries for the November election, but stated that if the Court found it was not feasible, then the Court should enjoin the election. Defendant asserted that it was too late to set interim boundaries, stating that candidates had already been qualified, and argued reasons why an injunction was not justified

1

either. Although the Parties were provided ample opportunity to state their respective positions and make arguments, the Court also allowed both Parties to file supplemental information regarding the November election, which Defendant did (Doc. 236).

## BACKGROUND

Plaintiff Mathis Kearse Wright, Jr. brought this action to challenge the method of electing members of the Board of Education in Sumter County, Georgia. (Doc. 1.) Plaintiff contends that the current election plan's two at-large seats and high concentration of African-American voters in Districts 1 and 5 dilute African-American voting strength in violation of Section 2 of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301. (*Id.*) The Court held a bench trial in this matter beginning on December 11, 2017. (*See* Doc. 144.) Following the trial, the Court issued an order not only recounting the history of racial discrimination and segregation in Sumter County, but specifically finding that the current voting map for Sumter County Board of Education gives African-American citizens "less opportunity to elect candidates of their choice than" white citizens. (Doc. 198 at 33.) After analyzing the relevant factors, and based on the totality of the circumstances, the Court found that "the at-large districts of the Sumter County Board of Education dilute African-American voting strength in violation of Section 2 of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301." (*Id.* at 37.) The Court determined that an alternative election plan would need to be enacted but given that the General Assembly was still in session, ordered the Parties to first confer with Sumter County's legislative delegation regarding its inclination to enact a remedial plan before adjourning. (*Id.*)

After Defendant notified the Court that the Georgia General Assembly would be unable to pass legislation on Sumter County's redistricting during its 2018 session (Doc. 201), Plaintiff moved for an injunction of the May 2018 election. Because the Court had already resolved the Parties' dispositive motions, held a bench trial and post-trial hearings, and reviewed "extensive and ongoing briefing by the parties," the Court resolved Plaintiff's motion for an injunction and allowed Defendant an opportunity to respond to the order. (Doc. 204 at 3.) The Court first found that because it had already decided the merits of the action—that Defendant's plan violated the Voting Rights Act—the only appropriate injunction would be a

2

permanent injunction. (*Id.*at 4.) The Court determined that all three requirements for a permanent injunction had been met: Wright had prevailed on his claim, there was no adequate remedy at a law for a violation of Section 2 of the Voting Rights Act, and the loss of a meaningful right to vote created an irreparable harm. (*Id.* at 5.) The Court then enjoined Defendant's election scheduled for May 22, 2018 and reset it to November 6, 2018, ordering that voters be informed that races for the Sumter County Board of Education had been enjoined. (*Id.* at 7.) The Court stated that it would enter an order setting interim boundaries for the new districts by July 23, 2018. *Id.* Defendant appealed that order and the Court's order as to liability. (*See* Docs. 207 & 209.) The Court found that the notice of appeal conferred jurisdiction on the Eleventh Circuit and divested it of jurisdiction to set interim boundaries, a subject involved in the appeal, and therefore removed its self-imposed deadline to set interim boundaries. (Doc. 214 at 3). Plaintiff then moved the Court to reconsider its ruling and to issue a remedial order or, alternatively, "to make clear that the County may not hold any more elections under the unlawful plan." (Doc. 215 at 5.) The Court denied Plaintiff's motion to reconsider but stated that it would "consider the request for a further stay of elections at a later date." (Doc. 217 at 7.)

On July 31, 2018, Plaintiff filed the pending Emergency Motion for an Injunction Pending Appeal (Doc. 218) and a Motion to Expedite briefing on the emergency motion (Doc. 219). Plaintiff states that according to defense counsel, the "drop-dead date" to remove the election from the November ballot is Friday, August 17, 2018. (Doc. 218.) Plaintiff argues that the factors the Court should consider in determining whether to enter an injunction pending appeal weigh in favor of granting an injunction to maintain the status quo between the Parties. *Id.* The Court granted the motion to expedite and also ordered the Parties to inform the Court whether a hearing would be necessary. (Doc. 220.) Plaintiff argued that a hearing would be necessary and that it intended to subpoena Sumter County's Supervisor of Elections, Robert Brady, but Defendant argued that a hearing was not necessary because there was no material dispute of fact. (Docs. 221 & 222.) Thereafter, Defendant responded to Plaintiff's Motion for an Injunction arguing that this Court lacks jurisdiction to enjoin the election (an issue involved in the appeal) and that equities favor denying Plaintiff's motion. Doc. 223.) Defendant also

3

attached a declaration from Robert Brady stating that by Court Order, the qualifying period for candidates was scheduled between August 6 and 10, 2018 and that he had contacted the Secretary of State Center for Election Systems to ask for additional time and was informed that the last day to provide ballot information to the Secretary of State was August 17, 2018. (Doc. 223-1.) The next day, the Court issued an order finding that "a hearing would be unnecessary in view of the available record and prior orders of the Court." (Doc. 224.) The following day, the Eleventh Circuit remanded this case to this Court, instructing as follows:

> On remand, the district court should first determine whether it is still feasible to issue a new map with interim boundaries for the November election in a timely manner. If so, the district court should then proceed to determine such interim boundaries for the November election, as it previously contemplated doing by July 23, 2018, and enter any orders necessary to effectuate its ruling before returning the case and the record to this Court. If the district court concludes, however, that it is too late at this juncture to issue an order setting any boundaries for the November election other than the ones currently in place, then it should enter an order to that effect, resolve any motions filed by the parties regarding the operation of the November election, and then return the case to this Court.

(Doc. 225 at 3.) The same day, Plaintiff moved for a telephonic conference or hearing. (Doc. 226.) The Court granted that motion and asked the Parties to provide their positions on the issues to be discussed during the conference. (Doc. 227.) The Parties complied and after hearing from the Parties during the conference, the Court directed that Robert Brady contact the State regarding the last day for ballots to be printed for November's elections and also allowed the Parties to file supplemental information no later than Thursday, August 16, 2018 at 5:00pm. (*See* Docs. 234 & 235.)

## **DISCUSSION**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "Because of the central importance of the right to vote in our system of representative democracy, 'any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized,' . . . and that is the duty of the courts." *Siegel v. LePore*,

4

234 F.3d 1163, 1200 (11th Cir. 2000) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964)) (explaining that the right to vote "in a free and unimpaired manner is preservative of other basic civil and political rights"). In other words, "the right to vote is [] a right of paramount constitutional significance, the violation of which permits federal court intercession." *Hall v. Holder,* 117 F.3d 1222, 1231 n. 18 (11th Cir. 1997). As such, courts are obligated to ensure that a state does not engage in "arbitrary and disparate treatment" by valuing "one person's vote over that of another." *Bush v. Gore,* 531 U.S. 98, 105 (2000); *Wesberry*, 376 U.S. at 18. Where, as here, a court has already determined that a plan infringes on the right to vote, that court should be reluctant to allow the infringement to continue. *Reynolds*, 377 U.S. at 585 ("[I[t would be the unusual case in which a court would be justified in not taking appropriate action to [e]nsure that no further elections are conducted under the invalid plan."). Indeed, the Voting Rights Act "should be interpreted in a manner that provides 'the broadest possible scope' in combating racial discrimination." *Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (citation omitted). It is for such reasons that so many courts have prevented elections from occurring under unconstitutional plans[1], and it is for these reasons that this Court finds that Sumter County's school board elections should not continue under the current plan.

The Court, however, declines to adopt one of the remedial plans proposed by Plaintiff[2], especially given the strong objections to the plans announced by Defendant and the obligation of the Court to ensure that a remedial plan is constitutional. This means that the only remaining options would be for the Court to draw a new plan timely in advance of the November election or let the General Assembly redistrict the current boundaries. The Court finds that it cannot feasibly redistrict the boundaries timely before the November election. The candidates have already qualified (per the Court's order and Plaintiff's recommendation),[3]

---

[1] *See*, *e.g.*, *Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347-48 (N.D. Ga. 2015), *Brown v. Detzner*, 895 F. Supp. 2d 1236, 1243-44 (M.D. Fla. 2012), and *Bowser v. McCrory*, No. 1:13CV949, 2016 U.S. Dist. LEXIS 174564, at *3 (M.D.N.C. Feb. 9, 2016) (denying motion to stay injunction pending appeal); *see also Wilson v. Minor*, 220 F.3d 1297, 1301 n.8 (11th Cir. 2000) (denying motion to stay district court's order implementing new plan pending appeal).

[2] Although the Court finds that Plaintiff's proposed plans provide helpful information for developing a remedial plan, the Court has never determined that one of Plaintiff's proposed plans should be implemented. (*See* Doc. 206 at 6.)

[3] (*See* Docs. 204 at 7 & 189.)

and the asserted deadline to change ballots is August 17, 2018[4]. Furthermore, the redistricting process would require the Court to receive objections and feedback from the Parties, and then somehow put the ultimately approved plan into place sufficiently in advance of the scheduled election to still allow for campaigning in these new districts and voter awareness of their new districts. The Court determines that although it is possible that the Court could establish an interim map, it is realistically too late for the Court to do so now. Defendant has persuasively articulated the many difficulties that would result if the Court changed the boundaries at this late juncture and allowed the November election to proceed based thereon, including the difficulties in changing a ballot process scheme and the increased burdens placed on the State and County to comply in the midst of campaign season. Therefore, the Court should not and practically cannot effectively set interim boundaries in time for the November election.

It is also well-established, as the Parties and Court have previously found, that the legislature should have the first opportunity to remedy an unlawful election plan "whenever practicable." *Wise v. Lipscomb*, 437 U.S. 535, 539-40 (1978) (finding "that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt"); (Docs. 140; 141 at 3-4; 198 at 37). The Court previously found that it was not practicable or appropriate to defer to the Assembly for the then-scheduled May 2018 election since the Assembly would be adjourned until January 2019. (Doc. 204 at 6.) Therefore, the Court decided it would issue interim boundaries until the Assembly reconvened. But now, the Assembly will be sitting a mere two months after the currently-scheduled election in November, meaning that it is now practicable for the Assembly to craft the first remedial plan before a future election.

Defendant previously notified the Court that "[t]he General Assembly reconvenes its next session in January 2019 and, as noted by Senator Sims, could take up this matter during that session." (Doc. 201 at 2.) School board elections regularly occur in May of even-numbered years. (Doc. 198 at 6.) However, dates for special elections are already set in March, June, and September of 2019, and general municipal elections will apparently be held in November of 2019. (*See* Docs. 218 at 8; 223-1 at 5, 228 at 4.) Although the Court is hopeful that the

---

[4] (*See* Docs. 218 & 221.)

legislature may be able to draw new boundaries for Sumter County by March 2019, the Court finds that there should be sufficient time to at least enact a constitutional districting plan in time for the June, September, or November election dates—either by the legislature, or if not, by this Court.[5]

In determining whether to enjoin an election, courts "should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Reynolds*, 377 U.S. at 585. Courts may allow an election to proceed under an unlawful plan when "an impending election is imminent and a State's election machinery is already in progress." *Id.*; *New York v. Cathedral Acad.*, 434 U.S. 125, 129 (1977) (same); *see Covington*, 137 S. Ct. at 1625. But, in doing so, courts should endeavor to prevent future elections from violating the statutory or constitutional rights of voters. *See Reynolds*, 377 U.S. at 585-87 (affirming the district court's action as "an appropriate and well-considered exercise of judicial power" where it first allowed the legislature an opportunity to remedy the plan and then set an interim plan while waiting for the legislature).

The Court has already found that the three factors warranting a permanent injunction exist in this case (Doc. 204 at 5), and the Court so finds again now. Wright has prevailed in his claim (Doc. 198); there is no adequate remedy at law if the election occurs (s*ee Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986)); and the loss of a meaningful right to vote creates an irreparable harm (*id.*). Furthermore, because the appeal in this case has been held in abeyance, the Court further finds that the factors warranting an injunction pending appeal exist here. Plaintiff is likely to succeed on appeal because the Court has already found in a detailed, 38-page order that the Defendant's current plan is unconstitutional. (Doc. 198.)[6]

---

[5] "Legislative bodies should not leave their reapportionment tasks to the federal courts; but when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the 'unwelcome obligation,' *Connor* v. *Finch,* [431 U.S. 407, 415 (1977)], of the federal court to devise and impose a reapportionment plan pending later legislative action." *Wise*, 437 U.S. at 540 (referring also to redistricting).

[6] The Court finds there is a basis for the likelihood of Plaintiff's success on appeal because "[d]espite African Americans constituting 49.5% of the voting age population in Sumter County, they are only able to elect their candidates of choice to 29% of the school board seats," meaning that their voting strength is diluted in violation of Section 2 of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301. (Docs. 204 at 6 & 198 at 2, 37.) Of course, notwithstanding this Court's finding regarding Plaintiff's likelihood of success, this Court is not presuming the result of the Circuit's independent review of the record in this case.

Plaintiff will be irreparably harmed absent an injunction. *See Bowser*, 2016 U.S. Dist. LEXIS 174564, at *3 ("To force the plaintiffs to vote again under the unconstitutional plan . . . constitutes irreparable harm to them, and to the other voters . . . ."); *Dillard*, 640 F. Supp. at 1363. An injunction would only minimally, if at all, harm other parties – Defendant's arguments about voter confusion and costs to Sumter County, although due some weight, are not persuasive. Here, the election is almost three months away and the election machinery, though in progress, has only just begun. Candidates were qualified just one week ago, and the Parties have informed the Court that ballots may be changed until August 17, 2018.[7] (*See* Docs. 233 & 234.) Thus, voter confusion, costs, and burdens on election administration will be minimized by the Court issuing this order very early in the election preparation process and by the deadline provided by Defendant to do so. *See Brown v. Detzner*, 895 F. Supp. 2d 1236, 1242 n.8 (M.D. Fla. 2012) (finding similar arguments insufficient to warrant denying injunctive relief).[8] Furthermore, Defendant has offered no substantiation for its conjecture that one or more incumbents may resign, leaving voters unrepresented, where it otherwise appears that vacancies are filled and incumbents remain in office until succeeded. (Doc. 153-22 at 2-3) (House Bill 836). Finally, an injunction is in the public's interest because "[t]he public has an interest in having [] representatives elected in accordance with the Constitution." *Bowser*, 2016 U.S. Dist. LEXIS 174564, at *4 (finding that "the public interest aligns with the plaintiffs' interests"). The Court has considered Defendant's supplemental argument that an injunction would prevent an African-American candidate the opportunity to be elected because a white incumbent has decided not to run for reelection and there are two at-large candidates, one of whom is white and one of whom is African American. (Docs. 236 at 2 & 233-1 ¶ 7.) But this argument, while somewhat relevant, is incongruous to this case because the key finding made by the Court is not that African-American candidates disproportionately *run*, but that they are

---

[7] The Court notes that it enjoined the May 2018 election with far less time remaining before the election.
[8] According to Wright, there has been little advertising of the November school board election and "very little people in Sumter County are aware that there are school-board elections scheduled for the November ballot." (Doc. 228-1.) Although Defendant shows that on August 1, 2018, Robert Brady published a "Notice of Special Called Election" regarding the School Board election for November 6 and candidate qualification period for August 6-10, these factors further persuade the Court that the County has only recently begun preparing for the School Board's November election such that an injunction would not cause substantial voter confusion or burdens on election administration.

disproportionately *elected* because African Americans' voting strength is diluted by the current election plan. (*See* Doc. 198.) In other words, even where African Americans run for the County's School Board, African Americans are less likely than white voters to be able to elect the candidate of their choice. Any candidate elected in November 2018 would, unless something changes other than the existing districting plan, be in office for another four years. (Docs. 198 at 6 & 218 at 7.) By issuing an injunction, the Court is giving African-American voters an opportunity to vote in the near future under a constitutional election plan when they are more likely to be able to elect the candidates of their choice. Accordingly, the aforementioned factors weigh in favor of an injunction.

      Defendant's arguments that this Court lacks jurisdiction to enter an injunction are unavailing. Not only has the Eleventh Circuit remanded this case to this Court, but it recounted that Plaintiff had requested "an order enjoining the County from conducting the November election under the current boundaries" and then instructed this Court to "resolve any motions filed by the parties regarding the operation of the November election." (Doc. 225 at 3.) As such, this Court clearly has jurisdiction to enter an injunction. Furthermore, the status quo at the time this matter was appealed was that Sumter County Board of Education's election was enjoined, and the Court finds that a continuing injunction of elections under the current unlawful plan would further preserve the status quo. Defendant's argument that "this Court represented on two occasions since late March that an election would go forward on November 6," presumably even with the current unconstitutional district boundaries, misconstrues the Court's prior orders. (Doc. 223 at 17, 18.) The Court's order in late March enjoined the May 22, 2018 election and reset it for November 6, 2018 with the specific notice that the Court would be setting interim boundaries in time for the November election. (Doc. 204 at 7.) After this order, Defendant filed a notice of appeal (Doc. 207), which this Court found divested it of jurisdiction to set interim boundaries because the Court's finding of liability and its injunction order were on appeal. (Doc. 214.) The Court specifically found that Federal Rule of Civil Procedure 62(c) permitted the district court only to preserve the status quo and, at that time, the status quo was the existing boundaries and an election set for November. *Id.* The Court stated that the Eleventh Circuit had declined to expedite the appeal

or remand the case and, therefore, the Court could not change anything with regard to the November election without jurisdiction to do so. *Id.* at 5-6. Now, however, the Court has jurisdiction and, with such jurisdiction, finds that the November election should be enjoined.[9]

The case cited by Defendant in arguing against a special election is distinguishable from this case. In *Covington*, the Supreme Court agreed with the defendant that the district court's remedial plan should be vacated "for the simple reason that the district court failed to meaningfully weigh any equitable considerations." *North Carolina v. Covington*, 137 S. Ct. 1624, 1625 (2017). The Supreme Court found it "most cursory" that the court "simply announced that 'while special elections have costs,' those unspecified costs 'pale in comparison' to the prospect that citizens will be 'represented by legislators elected pursuant to a racial gerrymander.'" *Id.* at 1626. This Court not only analyzed and weighed the relevant equities before granting a prior injunction (Doc. 204), but it has done so again here. Although the district court in Covington ultimately determined that Plaintiff's motion for a special election should be denied, this case warrants a different result. *Covington v. North Carolina*, 270 F. Supp. 3d 881, 902 (M.D.N.C. 2017). A special election on a date next year would not necessarily be unjustified because of the risk of generating voter confusion and low voter turnout, although that is a factor that the Court finds weighs against setting a special election. *See id.* But other "obvious considerations" must be taken into account, including "the severity and nature of the particular constitutional violation, the extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and the need to act with proper judicial restraint when intruding on state sovereignty." *Covington*, 137 S. Ct. at 1626. This Court has already found that "the infringement of black voters' right to vote in Sumter County is severe." (Doc. 204 at 6.) The Court would not be imposing an early election or "unduly abbreviating the process for enacting and reviewing new legislative districting plans," but would set a special election, if necessary, after giving the legislature time to enact a new districting plan. *Covington*, 270 F. Supp. 3d at 902. Furthermore, the Plaintiff in *Covington* asked the court to "truncate the terms of legislators . . . and order a special election to fill those seats with representatives

---

[9] To be clear, the Court has not varied since late March on its finding that the current district boundaries for Sumter County Board of Education's elections are unlawful.

elected under constitutional districting plans," and asked for this to be done under a rushed schedule. *Covington*, 270 F. Supp. 3d at 884. Again, the Court is not doing that here, and for these same reasons, the Court is exercising proper restraint by not intruding unnecessarily on state sovereignty. Thus, the Court finds that these factors weigh in favor of granting the requested injunction and setting a special election after Sumter County Board of Education's district boundaries are constitutionally drawn.

The Court recognizes that "citizens are entitled to have their rights vindicated as soon as possible so that they can vote for their representatives under a constitutional [] plan." *Smith v. Beasley*, 946 F. Supp. 1174, 1212 (D.S.C. 1996); *Cosner v. Dalton*, 522 F. Supp. 350, 364 (E.D. Va. 1981). Yet, the Court will not impose "unreasonable or embarrassing demands on a State" to accomplish that goal. *Reynolds*, 377 U.S. at 585. Rather, this Court will remain flexible and will allow the legislature the first opportunity to enact a new districting plan for the Sumter County Board of Education, consistent with the well-established principles of equity in election cases. In the meantime, the status quo remains.[10] This case will now be immediately returned to the Eleventh Circuit per that court's instructions.

## CONCLUSION

For the foregoing reasons, the Court finds that it is not feasible for it to timely issue a new map with interim boundaries and finds that the balance of equities weighs toward enjoining the November 2018 election as to the Sumter County Board of Education. Accordingly, Plaintiff's Motion for an Injunction (Doc. 218) is **GRANTED**. The Sumter County Board of Education election scheduled for November 6, 2018 is **ENJOINED** and will be reset at a later date. Defendant Sumter County Board of Elections and Registration is hereby **ORDERED** to promptly inform voters and all other necessary parties that the November 6, 2018 election for the Sumter County Board of Education has been cancelled and will be rescheduled. Defendant Sumter County Board of Elections and Registration is **ENJOINED** from tabulating any votes cast in the November 6, 2018 election for any position on the Sumter County Board of Education.

---

[10] This order is consistent with and was made part of the Court's prior order (Doc. 237) by reference.

The Parties shall confer expeditiously and as soon as feasible in good faith with the General Assembly to aid it in drawing new boundaries for Sumter County Board of Education's elections in view of the Court's findings on the merits with regard to Plaintiff's complaint. The Parties shall keep the Court timely advised of relevant developments, including whether the Assembly intends to enact new boundaries during its 2019 session and, if so, when that will be completed, and the deadlines for creating ballots for election dates in 2019. Whether the boundaries are redrawn by the legislature or this Court, an election should be set for the next possible election date after a constitutional districting plan is in place.[11]

**SO ORDERED**, this 20th day of August 2018.

                                              **/s/ W. Louis Sands**
                                              **W. LOUIS SANDS, SR. JUDGE**
                                              **UNITED STATES DISTRICT COURT**

---

[11] The Court acknowledges that the injunction order on appeal contemplates the Court drawing and implementing its own plan, rather than the legislature. To clarify, due to reasons stated herein, the Court now finds that it would be more appropriate for the legislature to have the first opportunity to develop a new districting plan and seeks to make the Circuit Court aware of the Court's position on this issue as part of the appeal before that court. Since a new plan was intended in the initial injunction order (Doc. 204) and is contemplated in this order, the Court does not believe the status quo is substantively altered simply because the legislature would have the first opportunity to craft a plan rather than the Court setting an interim plan while waiting for the legislature. Rather, this order allows the legislature to act first with respect to the remedy the Court previously determined was necessary.